IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CRYSTAL R. E., | ) |
|     Plaintiff, | ) ) ) |
| v. | ) )   Case No. 20-cv-00319-SH |
| KILOLO KIJAKAZI,[1] Acting Commissioner of Social Security, | ) ) ) ) |
|     Defendant. | ) ) |

**OPINION AND ORDER**

Plaintiff Crystal R. E. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. (ECF Nos. 5 & 7.) For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits.

**I.      Disability Determination and Standard of Review**

Under the Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage

---

[1] Effective July 9, 2021, pursuant to Fed. R. Civ. P. 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 404.1520. To determine whether a claimant is disabled, the Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe medically determinable impairment(s); (3) whether the impairment(s) meets or equals a listed impairment from 20 C.F.R. pt. 404, subpt. P, app. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do her past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 404.1520(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The

Court will "meticulously examine the [administrative] record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Background and Procedural History

Plaintiff applied for Title II disability benefits on November 2, 2017, with a protective filing date of November 1, 2017. (R. 218, 429-30.) In her application, Plaintiff alleged an initial disability onset date of June 30, 2017, which she later amended to January 22, 2018. (R. 429, 443.) Plaintiff claimed she was unable to work due to conditions including osteoarthritis, degenerative disc disease, bone spurs, bipolar disorder, and high blood pressure. (R. 456.) Plaintiff was 47 years old at the time of the ALJ's decision. (R. 231, 429.) Plaintiff has less than a high school education and past relevant work as a nurse aide. (R. 259-61, 269-70.)

Plaintiff's claim for benefits was denied initially and upon reconsideration. (R. 347-50, 352-59.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted on May 24, 2019. (R. 256-75, 375-76.) The ALJ issued a decision on July 19, 2019, denying benefits and finding Plaintiff not disabled. (R. 218-31.) The Appeals Council denied review on May 6, 2020 (R. 2-7), which normally renders the decision final, 20 C.F.R. § 404.981. Plaintiff timely filed this appeal on July 6, 2020 (ECF No. 2), within 65 days of that order. *See* 20 C.F.R. § 422.210(c). After this appeal was filed, on August 3, 2020, the Appeals Council issued a letter stating that it had

3

reviewed additional evidence concerning the case and concluded that no change in the prior action was warranted. (R. 1.) The Appeals Council noted the case was now before a district court and that no further administrative action would be taken pending the Court's review. (*Id.*)

### III. The ALJ's Decision

In his decision, the ALJ found Plaintiff met the insured requirements for Title II purposes through December 31, 2022. (R. 220.) The ALJ then found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 22, 2018. (*Id.*) At step two, the ALJ found Plaintiff had the following severe impairments: (1) degenerative disc disease; (2) osteoarthritis in the knees; (3) obesity; and (4) anxiety. (R. 221.) At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment. (R. 221-24.)

After evaluating the objective and opinion evidence, as well as Plaintiff's testimony, the ALJ concluded that Plaintiff had the RFC to perform "sedentary work as defined in 20 CFR 404.1567(a)," with the following additional limitations:

> The claimant can occasionally lift and/or carry ten-pounds, frequently up to ten-pounds, stand and/or walk at least two [] hours in an eight-hour workday and sit at least six [] hours in an eight-hour workday. No more than occasionally climbing of such things as stairs or ramps, ladders, ropes or scaffolds, balance, stoop, kneel, crouch or crawl. She can perform simple, repetitive tasks and only occasionally interact with coworkers, supervisors, and the public.

(R. 224.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 224-29.) At step four, the ALJ found Plaintiff unable to perform her past relevant work as a nurse aide. (R. 229.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as suture winder, touch-up

4

screener, and clerical mailer. (R. 230-31.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 231.)

## IV. Issues

Plaintiff raises one global allegation of error, with three sub-arguments. First, globally, Plaintiff challenges the abrogation of the "Court-Created 'Treating Physician Rule'" through the promulgation of regulations governing claims—like hers—that were filed on or after March 27, 2017. (ECF No. 18 at 3-6.) As noted below, the Court rejects Plaintiff's assertion that the regulations are not in effect or are otherwise modified by prior case law applying the "Treating Physician Rule."

Second, partly through the lens of this global argument and partly based on the details of the decision, Plaintiff challenges the ALJ's treatment of the opinions of three physicians: (1) Dr. Jack Brown—arguing the ALJ found his opinion persuasive without incorporating resulting limitations into the RFC (*id.* at 3, 6-9); (2) Dr. Timothy Doty— arguing the ALJ improperly rejected his opinion (*id.* at 3, 9-10); and (3) Ms. Helen Hoggard—arguing the ALJ cherry-picked from her internally inconsistent opinion (*id.* at 3, 10-14). Applying the current regulations, the Court finds that the ALJ's analysis of these medical opinions was incomplete and requires reversal.

## V. Analysis

### A. The "Treating Physician Rule" & the Current Regulations

Plaintiff appears to make two arguments regarding the continued viability of precedent applying the Treating Physician Rule despite the change in regulations effective March 27, 2017. First, Plaintiff appears to assert—without citation—that the new regulation deprives claimants of a "full and fair analysis in every claim," implicating the denial of due process. (ECF No. 18 at 5.) Second, Plaintiff argues that the Social Security

5

Administration (the "Administration") attempted, "by regulatory fiat," to "undo established Court precedent [that] stands for the commonsense [principle] that the opinions of medical sources who have actually examined or treated the claimant are entitled to more weight than those who have not." (*Id.* at 6.)

### 1. The History of the Treating Physician Rule.

As the parties discuss, some version of deference to "treating physicians" existed in court precedent prior to the Administration's adoption of regulations on the subject in 1991 (and the later overhaul of those regulations in 2017).[2]

Prior to the 1991 rule, review of an ALJ's treatment of medical source evidence varied between circuits. In the Tenth Circuit, as noted by Plaintiff, "the reports of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim." *Broadbent v. Harris*, 698 F.2d 407, 412 (10th Cir. 1983) (quoting *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980)); *see also Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987) ("The well-established rule in this circuit is that the Secretary must give substantial weight to the testimony of a claimant's treating physician, unless good cause is shown to the contrary."). In the Fifth Circuit, the standard was "considerable weight." *Floyd v. Bowen*, 833 F.2d 529, 531 (5th Cir. 1987). This was a middle ground. At one end of the spectrum, such as in the First Circuit, doctors were "not entitled to greater weight merely because they were treating physicians" as opposed to consulting physicians. *Rodriguez Pagan v.*

---

[2] Additional history regarding the advent and fall of the treating physician rule may be found in Charles Terranova's *Somebody Call My Doctor: Repeal of the Treating Physician Rule in Social Security Disability Adjudication*, 68 Buff. L. Rev. 931 (2020).

*Sec'y of Health & Hum. Servs.*, 819 F.2d 1, 3 (1st Cir. 1987).  At the other end, as in the Second Circuit, "a treating physician's opinion on the subject of medical disability" was "binding on the fact-finder unless contradicted by substantial evidence" and was entitled to great weight.  *Schisler v. Heckler*, 787 F.2d 76, 81 (2d Cir. 1986).

By 1991, the Administration noted "that judicial decisions in several circuits pointed to a need for a clear policy statement that would encourage uniformity of adjudication and provide the public and the courts with a definitive explanation of our policy on weighing treating source opinions."  Standards for Consultative Examinations and Existing Medical Evidence, 56 Fed. Reg. 36,932, 36,934 (Aug. 1, 1991).  Under the new regulations, <u>if</u> the ALJ found that a treating source's opinion on the nature and severity of an impairment was well-supported by medically acceptable clinical and laboratory diagnostic techniques—and was not inconsistent with other substantial evidence in the record—the ALJ would give that opinion "controlling weight."  20 C.F.R. § 404.1527(d)(2) (1992).  If the opinion was not given controlling weight, the ALJ would apply factors that included the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, and specialization.  *Id.*  The regulations also promised that the ALJ would "always give good reasons" for the weight given to a treating source's opinion.[3]  *Id.*

---

[3] This post-1991 regulation—and not some preexisting judicial fiat—appears to the be the source of some of the language quoted by Plaintiff in her arguments (ECF No. 18 at 6). *See, e.g.*, *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1177 (10th Cir. 2014) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) regarding these "good reasons," which, in turn, quoted 20 C.F.R. § 404.1527(d)(2)).

As it relates to weight, the Tenth Circuit interpreted the 1991 rule as tracking its prior precedent,[4] but the regulation differed from the more extreme Second Circuit's "version of the treating physician rule in material respects," *Schisler v. Sullivan*, 3 F.3d 563, 566 (2d Cir. 1993). Plaintiffs in that Circuit quickly challenged the new rule as a result. *Id.* The Second Circuit rejected the challenge, finding that the regulations fell within the scope of authority granted by 42 U.S.C. § 405(a) and that judicial review was limited to determining whether the regulations were arbitrary, capricious, or in excess of that grant of authority. *Id.* at 566-69.

Twenty-five years later, the regulations were again overhauled. Citing primarily changes in the healthcare delivery system,[5] the new rules moved away from assigning a "weight" to a particular medical opinion and, instead, focused on the "persuasiveness" of that opinion. Now, the ALJ does not "defer to give any specific evidentiary weight . . . to any medical opinion(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions by considering five factors: (1) supportability; (2)

---

[4] *Castellano v. Sec'y of Health & Hum. Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) ("In contrast to the situation in the Second Circuit, in this circuit the regulations have merely codified existing law." (citation omitted)).

[5] "Since we first adopted the current treating source rule in 1991, the healthcare delivery system has changed in significant ways that require us to revise our policies in order to reflect this reality. Many individuals receive health care from multiple medical sources, such as from coordinated or managed care organizations, instead of from one treating AMS [acceptable medical source]. . . . Indeed, many of the medical sources from whom an individual may seek evaluation, examination, or treatment do not qualify to be 'treating sources' as [previously] defined . . . because they are not AMSs. These final rules recognize these fundamental changes in healthcare delivery and revise our rules accordingly." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844, 5,853 (Jan. 18, 2017). Plaintiff is correct that earlier proposals also cited an issue with "voluminous case records." *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 Fed. Reg. 62,560, 62,574 (Sept. 9, 2016). As the Administration later clarified, however, this reference related to changes in articulation, not in the decision to move away from the treating source rule itself. 82 Fed. Reg. at 5,856 (referring to "voluminous files").

consistency; (3) relationship with the claimant (including length, purpose, and extent of treatment relationship, frequency of examinations, and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict an opinion. *Id.* § 404.1520c(a) & (c). Supportability and consistency are the most important factors, and the ALJ should always explain how he considered those factors in the decision. *Id.* § 404.1520c(b)(2). The ALJ is not required to articulate findings on the remaining factors, unless there are two or more medical opinions about the same issue that are equally well-supported and consistent with the record but are not identical. *Id.* § 404.1520c(b)(3). If the record contains a medical source opinion, the ALJ still must consider and address it in the RFC assessment, and, if the RFC conflicts with the opinion, the ALJ "must explain why the opinion was not adopted." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7.

### 2. Plaintiff Offers No Valid Basis to Ignore the Current Rule and Apply Prior Precedent.

Plaintiff first argues that the new regulation deprives her of a meaningful review of her claim—namely of her "right to have [her] claim individually reviewed by an impartial ALJ and all of the evidence considered." (ECF No. 18 at 5.) But Plaintiff offers no basis for believing that the new regulations prevent such a review. Section 404.1520c does not abrogate <u>what</u> medical evidence the ALJ considers; rather, it sets out <u>how</u> that evidence is evaluated. It does not result in less medical evidence being before the ALJ. The ALJ still must "review all of the evidence relevant to [a claimant's] claim" under the new rules. *See* 20 C.F.R. § 404.1520b; *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (the record must demonstrate ALJ considered all evidence). This evidence <u>includes</u> objective medical evidence and medical opinions, among other things. *See* 20 C.F.R. § 404.1513(a) ("What we mean by evidence."). As such, Plaintiff's first argument fails.

9

Next, Plaintiff argues that the 2017 amendments to the 1991 regulations somehow improperly attempted to undo pre-1991 precedent. (ECF No. 18 at 6.) This argument also fails. Pursuant to 42 U.S.C. § 405(a), the Commissioner has "full power and authority to make rules and regulations and to establish procedures . . . [and] reasonable and proper rules and regulations to regulate . . . the nature and extent of the proofs and evidence and the method of taking and furnishing the same . . . ." *Id.* In the Court's review of an agency's interpretation of statutes within its jurisdiction to administer, unless the statute is unambiguous and leaves no room for the agency to fill in gaps where the statute is silent, prior judicial construction will not trump an agency's reasonable interpretation. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982-83 (2005); *see also N.M. v. Dep't of Interior*, 854 F.3d 1207, 1221 (10th Cir. 2017) and *Seminole Nursing Home, Inc. v. Comm'r of Internal Revenue*, 12 F.4th 1150, 1156 (10th Cir. 2021) (both citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43, (1984)).

Here, the statutes at issue are silent as to the proper method of evaluating a treating physician's medical opinion. *See, e.g.*, 42 U.S.C. § 423(d)(5)(B) (noting that "[i]n making any determination the Commissioner . . . shall make every reasonable effort to obtain from the individual's treating physician . . . all medical evidence . . . necessary in order to properly make such determination," but not specifying how the Commissioner is to evaluate such evidence). As such, unless Plaintiff can show that the Commissioner's interpretation of her statutory authority is unreasonable—specifically by demonstrating it is arbitrary or capricious, *New Mexico*, 854 F.3d at 1221—the agency's reading holds.

As Plaintiff has made no such showing (no such argument, in fact), the Court finds the Commissioner's promulgation of 20 C.F.R. § 404.1520c was proper pursuant to her authority under 42 U.S.C. § 405(a). As such, this Court joins other courts in upholding

the new regulation and finding that it abrogates prior precedent applying the treating physician rule. *See, e.g., Novak v. Saul*, No. CIV-20-203-STE, 2021 WL 1646639, at *2-3 (W.D. Okla. Apr. 27, 2021); *Douglas v. Saul*, No. 4:20-CV-00822-CLM, 2021 WL 2188198, at *4 (N.D. Ala. May 28, 2021); *Moore-Allen v. Saul*, No. CV 20-2696, 2021 WL 2343012, at *6-8 (E.D. Pa. June 7, 2021); *Tasha W. v. Comm'r of Soc. Sec.*, No. 3:20-CV-731 (TWD), 2021 WL 2952867, at *6 (N.D.N.Y. July 14, 2021) (collecting cases).

Consequently, Section 404.1520c(b) governs the consideration of medical opinions and prior administrative medical findings in this case.

### B.   The ALJ's Consideration of the Medical Opinions

Applying the proper regulations, however, the undersigned finds it necessary to reverse and remand. In his decision, the ALJ maintained he "considered the medical opinion(s) . . . in accordance with the requirements of 20 CFR 404.1520c." (R. 224.) This Court finds that he did not. For all three opinions, the ALJ failed to explain—as is <u>always</u> required—how he considered supportability <u>and</u> consistency. The ALJ also improperly engaged in picking-and-choosing from Ms. Hoggard's opinion.

#### 1.   Jack H. Brown, M.D.

In his decision, the ALJ addressed an opinion provided by Plaintiff's primary care physician, Dr. Brown. (R. 229 (citing R. 711).) That one-page document was titled "Mental Status Form" and primarily asked questions regarding, as one might expect, Plaintiff's mental status. (R. 711.) However, in the process of answering the questions on the form, Dr. Brown also gratuitously noted that Plaintiff needed "no treatment; just [to] avoid lifting." (*Id.*) In evaluating the opinions on this form, the ALJ used the new language of persuasiveness, but he did not address both essential factors. Instead, the ALJ stated, in total,

11

> Dr. Brown's opinion is partially persuasive because it is based on his four[-]year treatment of the claimant; however, he treated the claimant's physical impairments, for him to give a mental opinion would be beyond the scope of his expertise.

(R. 229.) Yet the ALJ's reference to the time of treatment is not an analysis of supportability or consistency; instead, it relates to another factor—the medical source's relationship with the claimant. *See* 20 C.F.R. § 404.1520c(c)(3)(i) ("The length of time a medical source has treated [a claimant] may help demonstrate whether the medical source has a longitudinal understanding of [the claimant's] impairment(s)."). There is nothing wrong with the ALJ analyzing this factor; it is one of the factors an ALJ must consider. *Id.* § 404.1520c(c) ("We will consider the following factors . . . ." (emphasis added)). But it is not enough.

Regardless of any other factors considered, the ALJ must explain how he considered the two "most important factors"—supportability and consistency. *Id.* § 404.1520c(b)(2). Supportability can be seen as something internal to the medical source—"The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1) (emphasis added). Consistency, meanwhile, is more external—"The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

Here, at best, the ALJ explained the supportability of Dr. Brown's opinion, presumably referring to the medical evidence in Dr. Brown's files when he noted that Dr.

Brown had not treated Plaintiff for her mental impairments.[6] Furthermore, this absolute statement appears to lack substantial evidence to support it. The records from Dr. Brown indicate that he diagnosed and treated Plaintiff for anxiety from 2015 to 2018. (R. 689, 691-92, 694-99, 701-04.)

As for consistency, there is nothing in the ALJ's explanation of the persuasiveness of Dr. Brown's opinion that indicates he even <u>considered</u> whether or not it was consistent with the evidence from other sources. The Commissioner argues that other evidence supports the ALJ's determination of persuasiveness, and the Court "should not find that the ALJ was required to repeat himself with respect to his discussion of Dr. Brown's opinion." (ECF No. 22 at 10.) However, this isn't a matter of the Court asking the ALJ to restate, in minute detail, all of the reasons why he found (or did not find) Dr. Brown's opinion consistent with other evidence. Instead, the ALJ simply failed to discuss consistency at all—either by name or in substance. The Commissioner is, in effect, asking the Court to determine for itself what evidence it believes is consistent or not consistent with Dr. Brown's opinion. Such an invitation to invent post hoc rationalizations not apparent from the ALJ's decision is inappropriate. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007); *see also Allen v. Barnhart*, 357 F.3d 1140, 1142, 1145 (10th Cir. 2004) (post hoc efforts "to salvage [an] ALJ's decision" often require the court "to overstep [its] institutional role and usurp essential functions committed in the first instance to the administrative process").

---

[6] At worst, this reference also related only to the factor of Dr. Brown's "relationship with the claimant." *See id.* § 404.1520c(c)(3)(iii) (noting the relationship factor includes "Purpose of the treatment relationship. The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairments.").

Finally, the Court cannot—as the Commissioner asks—find that the ALJ adequately accounted for the portion of Dr. Brown's opinion that the ALJ credited—i.e., that Plaintiff "just avoid lifting." (ECF No. 22 at 10.) Again, without any guidance from the ALJ himself, the Commissioner posits that the ALJ could have "reasonably interpreted Dr. Brown's statement in this regard as not precluding the limited lifting required in sedentary work," i.e., no more than 10 pounds at a time. (*Id.*) However, such an interpretation would be directly contrary to Dr. Brown's statement, just a few months earlier, that Plaintiff could lift "no more than 5 lbs." (R. 688.) Again, the ALJ could have found this particular opinion by Dr. Brown unpersuasive, or the ALJ could have looked at other evidence to determine that Plaintiff was not quite as limited as Dr. Brown had stated. And, had the ALJ so found, the Court would uphold such a finding if it met the minimal requirements for "substantial evidence." *Biestek*, 139 S. Ct. at 1154. The Court, however, cannot in this instance supply a finding the ALJ did not make. *Allen*, 357 F.3d at 1142.

### 2. Timothy Doty, Psy. D.

Similarly, the ALJ declined to offer more than a single line of discussion as to the consistency and supportability of Dr. Doty's opinion under 20 C.F.R. § 404.1520c. (R. 229 (citing R. 678-86).) After summarizing Dr. Doty's opinion, the ALJ found it "not persuasive because it appears to be based only on the claimant's subjective complaints." (*Id.*) Again, at best, this statement addresses the supportability of the opinion.[7] There is nothing in the ALJ's analysis of Dr. Doty's opinion that indicates whether the ALJ even

---

[7] And, again, this statement appears to be contradicted by the medical record itself, which indicates that Dr. Doty administered a "mini mental status exam" and offered his opinion based upon his observations and expertise, in addition to Plaintiff's statements. (*See, e.g.*, R. 679-81.)

14

considered the extent to which that opinion was consistent with evidence from other sources. 20 C.F.R. § 404.1520c(c)(2). Moreover, this Court finds the ALJ's perfunctory dismissal of Dr. Doty's opinion—which he determined was completely unpersuasive—odd in light of the ALJ's analysis at step three, where he relied exclusively on Dr. Doty's findings to determine that Plaintiff was between mildly and moderately limited in all "paragraph B" criteria. (R. 223-24.) Whether the ALJ relies on the opinion or not, a proper 20 C.F.R. § 404.1520c evaluation is required. The ALJ failed to include one in his decision regarding Dr. Doty's opinion. This must be corrected.[8]

### 3. Helen Hoggard, APRN-CNP.

Finally, in his evaluation of Ms. Hoggard's opinion, the ALJ outlined a number of her findings and stated, "Ms. Hoggard's opinion is persuasive because she treated the claimant along with Dr. Brown and her opinion is based on treatment notes." (R. 228.) It would take some contortions for the Court to stretch this single line of analysis into an explanation of the supportability and consistency of Ms. Hoggard's opinion—possibly finding the ALJ meant the opinion was supportable because it was based on treatment notes and consistent because the treatment was administered alongside Plaintiff's

---

[8] The Court also rejects any argument that Dr. Doty did not offer a medical opinion. (*See* ECF No. 22 at 14 & n.14.) As the Commissioner recognizes, an opinion is not a list of a claimant's self-provided symptoms but is, instead, a "statement from a medical source about what [a claimant] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions" in their abilities to perform the physical, mental, and other work demands. 20 C.F.R. § 404.1513(a)(2). There is no dispute that Dr. Doty qualifies as an "acceptable medical source." *See id*. § 404.1502(a)(2) (including licensed psychologists). Moreover, Dr. Doty's opinion relates directly to Plaintiff's ability to perform the mental demands of work activities, including understanding, remembering, maintaining concentration, and persistence (R. 680). *See id*. § 404.1513(a)(2)(ii).

longtime treating physician. The Court, however, finds it cannot make such a leap considering the nature of Ms. Hoggard's opinion.

As both Plaintiff and Defendant highlight, Ms. Hoggard offered opinions and findings that seem, on their face, inconsistent. (ECF No. 18 at 11; ECF No. 22 at 12 & n.12.) Indeed, the Commissioner states that Ms. Hoggard's statements were so "wildly contradictory" that it is "simply disingenuous" to believe the ALJ could or should have included all of them in his hypothetical to the VE. (ECF No. 22 at 13.)

For example, while Ms. Hoggard opined that Plaintiff's pain would cause limitations and restrictions having only a minimal effect on her ability to do basic work activities or activities of daily living (R. 793), she also found that physical work activities would increase Plaintiff's pain to such a degree as to cause inadequate functioning in such tasks or total abandonment of the tasks (*id.*), that Plaintiff's pain would occasionally be severe enough to interfere with the concentration and attention needed to perform even simple tasks in a workday (R. 797),[9] that Plaintiff could only sit for four hours in a workday (R. 798),[10] and that Plaintiff would likely be absent from work due to her impairments about two days per month (R. 799). The ALJ failed to devote any analysis to these findings, did not address the internal inconsistencies in Ms. Hoggard's opinions, and did not discuss how these opinions are otherwise consistent or supportable under 20 C.F.R. § 404.1520c. (R. 228.)

Moreover, while the ALJ purportedly relied on Ms. Hoggard's opinions in formulating the RFC and at step five, he ignored some of her findings. (R. 224

---

[9] Yet, previously, Ms. Hoggard noted that Plaintiff could maintain concentration and attention for extended periods in a routine work setting. (R. 794.)

[10] Again, this contradicts a previous notation by Ms. Hoggard that Plaintiff could sit for up to six hours in a normal seated position. (R. 795.)

16

(determining Plaintiff could sit for at least six hours in an eight-hour workday), R. 269-71 (failing to address Ms. Hoggard's opinion regarding Plaintiff's absences with the VE).) He also failed to explain why—if he was intentionally not relying on these portions of Ms. Hoggard's opinion—he rejected the findings.[11] (R. 228.) As ALJs are generally not entitled to pick and choose through uncontradicted medical opinions,[12] relying only on portions of the opinion favorable to their findings, *Haga*, 482 F.3d at 1208, and are typically tasked with resolving conflicts in the record, *id.*, the ALJ's consideration of Ms. Hoggard's opinions was improper. He must remedy these errors on remand.

## VI. Conclusion

The ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order. On remand, the ALJ should properly evaluate all medical opinions in accordance with 20 C.F.R. § 404.1520c.

**SO ORDERED** this 14th day of February, 2022.

_____
**SUSAN E. HUNTSMAN, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**

---

[11] Instead, the ALJ appeared to find the entirety of Ms. Hoggard's opinion to be persuasive. (R. 228 ("Ms. Hoggard's opinion is persuasive . . . .").) If the ALJ had found the opinion only partially persuasive, he would needed to have said so and to have detailed his supportability and consistency findings.

[12] As noted above, Ms. Hoggard's opinions are not uncontradicted, even internally. However, the general principle against mining medical opinions only for favorable findings still holds true in this case, particularly where the ALJ appeared to find the entire opinion to be persuasive.